UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

E.W.,

           Plaintiff,

        v.

Detroit Public Schools et. al.,

        Defendants.

Case No. 18-12964

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [53]**

Plaintiff E.W. commenced this excessive force action against Defendants Detroit Public Schools (DPS), Assistant Principal Myron Montgomery, Campus Security Officer Broadus Wilkins and Securitas Security[1] on September 20, 2018. Plaintiff alleges that on October 9, 2017, he was physically assaulted by Defendants Montgomery and Wilkins when he attempted to reenter his high school after hours to retrieve his wallet. After the dismissal of Defendant Securitas Security, the following claims remain: Fourth and Fourteenth Amendment Excessive Force (Count I), *Monell* Claim against DPS (Count II), Assault and Battery (Count III), Gross Negligence (Count IV), and Vicarious Tort Liability against DPS (Count VI).

_____

[1] The Court approved a settlement between Plaintiff and Defendant Securitas Security on March 12, 2020. (ECF No. 60).

Before the Court is Defendants' Motion for Summary Judgment [53] filed on January 22, 2020. Plaintiff filed a Response [54] on February 12, 2020. Defendants filed a Reply [55] on February 25, 2020. The Court held a hearing on the motion on July 15, 2020. As acknowledged on the record, Plaintiff failed to address Counts II and VI in his Response [54] brief and has therefore abandoned these claims. *See Brown v. VHS of Michigan, Inc*., 545 F. App'x 368, 372 (6th Cir. 2013). As to the remaining claims, for the reasons explained on the record, Defendants' Motion for Summary Judgment [53] on Plaintiff's state law claims is **GRANTED without prejudice** and for the reasons stated on the record and below, summary judgment on Plaintiff's Excessive Force claim is **DENIED**.

## FACTUAL BACKGROUND

### A. October 9, 2017 Incident

#### a. Plaintiff E.W.'s Account

On October 9, 2017, E.W. was a skinny 5' 3" 14-year-old ninth grade student at Westside Highschool. (ECF No. 53-4, PageID.682); (ECF No. 53-3, PageID.611). On the day of the incident, Plaintiff left his wallet in the care of a teacher while he played basketball afterschool. (ECF No. 53-2, PageID.547). After leaving school to catch the city bus to go home, Plaintiff realized that he forgot his wallet and walked back to the school to retrieve it. (*Id.*). Plaintiff planned to find either the teacher or the head principal to help him find his wallet. (*Id.* at 555-559). He alleges that upon

reentering the school through the side door, he was confronted by Assistant Principal Montgomery who yelled at him to leave. (*Id.* at 547, 569). Plaintiff says that he did not tell Montgomery that he was trying to find his wallet, because Montgomery was "hostile and angry" and would not have understood. (*Id.* at 571). Plaintiff then exited the school through the front door and reentered through the rear door. (*Id.*).

Once there, Plaintiff was confronted again by Montgomery. (*Id.* at 575). This time Plaintiff told Montgomery that he needed to retrieve his wallet. (*Id.*). Plaintiff alleges that Montgomery did not listen and yelled at him to leave within three seconds. (*Id.*). When Plaintiff did not leave, Montgomery pushed him out of the doors, slammed him to the ground, and drove his knee into Plaintiff's chest for five to six seconds. (*Id.* at 548, 577-80). Plaintiff alleges that after he stood up, Officer Wilkins punched him in the face with a straight arm, although Plaintiff was not moving and did not pose a threat to anyone. (*Id.* at 590-91). Plaintiff then called his sister and mother to pick him up and went to the hospital. (*Id.* at 583).

### b. Plaintiff's Encounter with Defendant Montgomery

Officer Wilkins claims that he and Mr. Montgomery were standing outside of the front doors of the school when he saw Plaintiff reenter the building through the side door. (ECF No. 53-4, PageID.684). Montgomery then walked through the front doors to meet Plaintiff at the side door entrance. (*Id.*). Once there, he claims he told Plaintiff that he had to reenter the school through the front doors in order to use the

metal detectors. (*Id.* at 656). Plaintiff refused and "shot an expletive" at him. (*Id.*). In response, Montgomery suspended Plaintiff for verbal abuse. (*Id.*).

Plaintiff then left the school only to reenter through the rear doors. (*Id.* at 685). Although Plaintiff told him that he was there to look for his wallet, Montgomery told him to leave because he was in the building "illegally". (ECF No. 53-4, PageID.629, 634). When Plaintiff did not leave on his own after Montgomery counted to three, Montgomery claims he physically escorted Plaintiff out of the building. (*Id.*). He also claims that he did not slam Plaintiff, but because Plaintiff was "resisting" they were "tussling" and both fell to the ground together. (*Id.* at 642). Once on the ground, Montgomery pinned his leg to Plaintiff's chest in order to restrain him. (*Id.* at 644); (ECF No. 54-12, PageID.1057). Shortly after he stood up, Montgomery walked back into the school to separate himself from the situation and does not have firsthand knowledge of what happened with Officer Wilkins. (ECF No. 53-4, PageID.645). Montgomery states that he did not see Plaintiff possess a weapon and does not recall if Plaintiff threatened his life. (*Id.* at 614). He says he feared for his own safety only because Plaintiff entered the building "illegally." (*Id.* at 640).

### c.  Officer Wilkins's Account

Officer Wilkins claims that he and Montgomery were standing outside of the front door when they saw Plaintiff enter through an exit only side door. (ECF No. 53-4, PageID.684). Montgomery then went to confront him. (*Id.*). Plaintiff then

walked out of the school through the front door and yelled "f\*\*k you and get the f\*\*k on" at Montgomery. (*Id.* at 685). Wilkins and Montgomery then saw Plaintiff reenter the building through the rear door. (*Id.*). At that point, Montgomery went into the building to find Plaintiff. (*Id.*). Soon afterwards, Wilkins heard Montgomery yelling at Plaintiff to the leave the building and counting to three. (*Id.*). He then saw them tussling and going out the back door. (*Id.*). He did not see Plaintiff try to assault or injure Montgomery in any way. (*Id.* at 686). Wilkins walked to the rear door and saw a Securitas officer picking up Plaintiff and trying to calm him down. (*Id.* at 688). Plaintiff was "cursing, ranting" and "raving." (*Id.* at 688). Montgomery walked back inside. (*Id.*). Wilkins claims that he also turned to walk inside when he saw Plaintiff running towards the door, at which point Wilkins turned, put his left arm straight out to stop him, and Plaintiff ran into his arm. (*Id.* at 690-91). Plaintiff then stopped and backed up. (*Id.*). Wilkins claims that Plaintiff did not threaten or attack him, he was just trying to run past him. (*Id.*). This encounter likely broke Plaintiff's jaw, but Wilkins did not know Plaintiff was hurt until the next day. (*Id.* at 692).

### d. Video Evidence

There is video evidence of Plaintiff's encounter with Montgomery, but not with Wilkins. (ECF No. 54-2). There are two camera angles from outside and inside the building. The video is skips 11 seconds from 15:43:19 to 15:43:30. Plaintiff alleges that his encounter with Wilkins occurred during this 11 second gap and was

suspiciously removed from the video. Defendants claim that cameras may have not recorded these 11 seconds, because they are motion activated. (ECF No. 68, PageID.1107).

### B. Plaintiff's Injuries

After the incident, his mother took him to the Emergency Room to be examined. (ECF No. 53-2, PageID.534). The incident left Plaintiff with an injured shoulder and a broken jaw. (*Id.* at 528-38). He had to consume food through a straw while his jaw healed. (*Id.*). For months he could not keep his mouth open or his shoulder raised without experiencing severe pain. (*Id.*). He has not taken medication for his shoulder since October 2017 and he can now completely raise his arm. (*Id.*). He can use his jaw now as well, however he frequently experiences shooting pain when he chews some things, particularly gum and hard candy. (*Id.*).

He has also suffered psychological harm. He claims that he cannot trust men or cops, has bad dreams, has trouble sleeping and has lost his dignity. (*Id.* at 544-45). A psychiatrist evaluated Plaintiff after the incident and concluded that he had anxiety, moderate depression, and posttraumatic stress disorder as a result of the incident[2]. (ECF No. 54-11).

---

[2] Prior to the incident, Plaintiff was going to counseling for psychological issues related to ADHD and being bullied in school. (ECF No. 54-11). The psychiatrist did not review these records before evaluating Plaintiff. (*Id.*).

## LEGAL STANDARD

Summary judgment is appropriate "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the Court views all of the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

## ANALYSIS

## I.  Count I: 4th and 14th Amendment Excessive Force

### a. Qualified Immunity

Wilkins and Montgomery argue that qualified immunity shields them from personal liability. "Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would

have known." *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (2006). To overcome this defense, Plaintiff must allege "facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time the act was committed." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1043 (6th Cir. 1992).

These facts must satisfy two prongs. First, Plaintiff must show that "based upon the applicable law, the facts viewed in the light most favorable to [him] show that a constitutional violation has occurred." *Sample v. Bailey,* 409 F.3d 689, 695 (6th Cir. 2005); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001). Second, Plaintiff must show that "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Sample,* 409 F.3d at 696; *see also Saucier*, 533 U.S. at 201.

A clearly established right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier,* 533 U.S. at 202 (internal quotation marks omitted). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Id.* at 201. Defining the contours of a right requires us to "look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Baker v. City of Hamilton,* 471 F.3d 601, 606 (6th Cir. 2006) (internal quotation marks omitted).

Defendants argue that Plaintiff does not have the narrow right to not be forcibly removed from school or be stricken with a straight arm when we he "twice purposely avoided metal detectors when entering a public school, and tussled with the principal resisting being ejected." (ECF No. 53, PageID.497). Plaintiff argues that his rights do not need to be so narrowly defined. In a similar case, the court found that plaintiff's "right to be free from force applied without disciplinary purpose or in such a disproportionate manner that it amounts to brutal and inhumane abuse of official power" was clearly established such that the school official "had fair notice [that he could not] condone . . . application of force without pedagogical purpose." *Howard v. Knox Cty., Tennessee*, No. 3:15-CV-6-TAV-CCS, 2016 WL 9455169, at *21 (E.D. Tenn. Sept. 7, 2016), *aff'd,* 695 F. App'x 107 (6th Cir. 2017). The court further stated that absence of a factually similar case does not preclude the liability, because "a student's right to bodily integrity in the school environment was clearly established at the time of the offending conduct." *Id.* The same can be said of this case.

Plaintiff's right to his bodily integrity in school was clearly established before the incident and Defendant had fair notice of this. Furthermore, there were non-physical and non-violent available methods for handling the situation and fact questions remain as to whether a constitutional violation occurred. Therefore, qualified immunity does not shield Mr. Montgomery from immunity. Moreover,

Officer Wilkins is similarly not protected by qualified immunity, because, in addition to lingering fact questions regarding his use of force, "it was clearly established that the use of force on a non-resistant or passively-resistant individual may constitute excessive force." *McCaig v. Raber*, 515 F. App'x 551, 556 (6th Cir. 2013); *see also Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) (finding a "clearly established constitutional right to be free from gratuitous violence" when plaintiff "posed no threat to the officers or anyone else.").

### b.  4th Amendment Excessive Force: Officer Wilkins

A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person" is evaluated under the Fourth Amendment's "objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520 (1979). Courts consider three factors in determining whether the totality of the circumstances justify a seizure. They are 1) the severity of the crime at issue, 2) "whether the suspect poses an immediate threat to the safety of the officer or others"

and 3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396-97.

It is undisputed that Plaintiff was never under arrest, let alone resisting or attempting to evade arrest. It is undisputed that Plaintiff did not pose a threat to his or anyone else's safety. (ECF No. 53-4, PageID.686, 691). It is also undisputed that Plaintiff committed no crime, but merely violated a school rule by entering the building through a side entrance without passing through a metal detector. (*Id*.); (ECF No. 53-3, PageID.629). Considering these facts and the lack of severity of Plaintiff's alleged offense—a reasonable jury could find that a straight arm punch from a 230 lbs. officer into the face of a 14-year-old boy was objectively unreasonable and constituted excessive force. (ECF No. 53-3, PageID.604). Furthermore, the record contains conflicting testimony as to whether Officer Wilkins swung his arm toward Plaintiff or Plaintiff ran into Officer Wilkin's outstretched arm. (*Id.* at 691); (ECF No. 53-3, PageID.590-91). This creates a genuinely disputed question of fact for the jury to decide. Summary judgment on this claim is therefore denied.

c.  14th Amendment Excessive Force: Assistant Principal Montgomery

Courts have found that "a student's claim of excessive force by a teacher is properly analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Fourth Amendment." *Gohl v. Livonia Pub. Sch.*, 134 F. Supp.

3d. 1066, 1083 (E.D. Mich. 2015), *aff'd Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836

F.3d 672 (6th Cir. 2016). "[I]t is well established that persons have a fourteenth

amendment liberty interest in freedom from bodily injury." *Doe v. Claiborne Cnty.*,

103 F.3d 495, 508 (6th Cir. 1996). The test for whether an injury is actionable under

the Fourteenth Amendment requires the Court to ask whether the complained-of

conduct "shocks the conscience."

> [T]he substantive due process inquiry in school corporal punishment
> cases must be whether the force applied caused injury so severe, was so
> disproportionate to the need presented, and was so inspired by malice or
> sadism rather than a merely careless or unwise excess of zeal that it
> amounted to a brutal and inhumane abuse of official power literally
> shocking to the conscience.

*Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987).

Evaluating cases arising from school settings, courts have found that even

where it lacked a legitimate pedagogical purpose, a single slap of a student by a

teacher does not "shock the conscience." *Lillard*, 76 F.3d at 725-26. Where a teacher

grabbed an elementary student, slammed her head into the blackboard, threw her on

the ground, and choked her, all for failing to bring a pencil to class, after which the

student exhibited petechia, neck contusions, and symptoms of post-traumatic stress

disorder, the shock-the-conscience standard was met, however. *Ellis ex rel.*

*Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). The

standard was also met where a principal broke down a bathroom door in which a

student was hiding, threw her against a wall, and slapped her several times. *Webb*,

828 F.2d at 1154.

The Sixth Circuit has imported the Third Circuit's four-part test as to whether

a student's constitutional claim "shocks the conscience."

> Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

*Domingo v. Kowalski*, 810 F.3d 403, 411 (6th Cir. 2016) (quoting *Gottlieb v. Laurel*

*Highlands Sch. Dist.*, 272 F.3d 168 (3rd Cir. 2001)). The Sixth Circuit noted that

although *Gottlieb* involved corporal punishment, it "provides a useful, though not

necessarily exhaustive, list of factors to balance in evaluating a student's claim that

a teacher's educational and disciplinary techniques violated the Fourteenth

Amendment." *Id.*

Mr. Montgomery attempts to justify his use of force by claiming that Plaintiff

had entered the building illegally, requiring him to physically "escort" him out of

the building when Plaintiff refused to leave. (ECF No. 53-3, PageID.629-30). He

did this despite knowing that Plaintiff he was looking for his wallet in the building.

(*Id.* at 634). This objective, even if assumed as legitimate, suffers from lingering

questions as to whether the force applied to achieve it was excessive or in good faith.

Most notably, the parties dispute whether Plaintiff and Defendant tussled out of the

school doors and fell to ground as their legs entangled or whether Defendant forcibly pushed Plaintiff out of the doors, slammed him into the ground, and drove his knee into Plaintiff's chest for several seconds. (*Id.* at 643); (ECF No. 53-3, PageID.548). Neither conclusion is obvious from the video evidence. Lastly, the parties also dispute whether Plaintiff suffered a serious injury from his encounter. Therefore, all four factors for evaluating excessive force weigh in favor of denying summary judgment.

### CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [53] is **GRANTED in part without prejudice** and **DENIED in part**.

**SO ORDERED**.

<u>s/Arthur J. Tarnow</u>
ARTHUR J. TARNOW
SENIOR U.S. DISTRICT JUDGE

Entered: July 22, 2021